UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHAN D. MURPHY, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3-08-cv-1486 (JCH) |
| | : | |
| v. | : | |
| | : | |
| BRYAN KEARNEY, ET AL. | : | |
| Defendants. | : | JUNE 25, 2010 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 38)**

**I.   INTRODUCTION**

Plaintiff, Jonathan Murphy, brought this action against Bryan Kearney, Michael Koval, and Robert F. Lawlor ("defendants"), all officers in the New Haven Police Department, in the Connecticut Superior Court, District of New Haven, on August 22, 2008.  See Complaint ("Cmplt.") (Doc. No. 1, Exh. 1).  Murphy brought claims against each of the defendants in both their individual and official capacities, which claims related to the defendants' October 8, 2005 arrest of Murphy.  On September 26, 2008, the defendants removed this action to federal court pursuant to 28 U.S.C. sections 1441 and 1446.

Murphy filed a Motion to Amend his Complaint on February 24, 2010, which the court granted absent objection.  See First Motion to Amend/Correct Complaint (Doc. No. 41).  In his Amended Complaint, Murphy brings both state and federal claims against the defendants exclusively in their individual capacities.  Specifically, in Count One Murphy brings federal claims alleging, inter alia, violations of his rights under the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments of the United States

-1-

Constitution, all pursuant to 42 U.S.C. section 1983.  See Amended Complaint ("Amd. Cmplt.") (Doc. No. 46).  In Count Two, Murphy alleges violations of his rights under the Connecticut Constitution, as well as assault, battery, false arrest, false imprisonment, infliction of emotional distress, and negligence.  See id.

Defendants now move for summary judgment as to the state and federal claims of false arrest and false imprisonment.[1]  See Motion for [Partial] Summary Judgment ("Mot. for Summ. Judg.") (Doc. No. 38).  For the following reasons, defendants' Motion for [Partial] Summary Judgment is granted.

## II.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See FED R. CIV. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. National R.R. Passenger Corp., 588 F.3d

---

[1] Defendants also moved for summary judgment as to Murphy's malicious prosecution claim and for all claims made against defendants in their official capacities.  See Mot. for Summ. Judg. at 5-11.  Because Murphy's Amended Complaint no longer contains those claims, it is unnecessary for the court to address them.  See Amd. Cmplt.

805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting FED. R. CIV. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

## III.  FACTUAL BACKGROUND[2]

Defendants Bryan Kearney, Michael Koval, and Robert F. Lawlor were New Haven police officers on October 8, 2005. See Defendants' Local Rule 56(a)(1) Statement ("L. R. 56(a)(1) Stmt.") at ¶ 1. Early in the morning hours on that date, plaintiff, Jonathan Murphy, became physically involved with at least one police officer on Crown Street in downtown New Haven. Id. For his role in the incident, Murphy was arrested by defendants and charged with the crimes of breach of peace and interfering with an officer.[3]

---

[2] For the purposes of the instant motion, the court accepts facts undisputed by the parties and supported by evidence as true, and resolves disputed facts in favor of the party against whom the motion under consideration is made.

[3] The specific facts surrounding the October 8, 2005 incident remain in dispute. For the purposes of the instant motion, both parties agree that Murphy was involved in an altercation and was arrested for his role in that altercation, whatever that role may have been. See L.R. 56(a)(1) Stmt. at ¶¶ 3-4; Plaintiff's

The charges against Murphy were disposed of through Connecticut's Accelerated Rehabilitation program, pursuant to Connecticut General Statute section 54-56e. Id. at ¶ 5. After a one-year probation period, those charges were eventually dismissed. Id.

## IV. DISCUSSION

"Section 1983 claims of deprivations of liberty related to criminal prosecutions implicate the Fourth Amendment right to be free of unreasonable seizure of the person." Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010). "Claims for false arrest . . . brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest . . . under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). Thus, because in a section 1983 claim for false arrest the court looks "to the law of the state in which the arrest occurred," the court addresses Murphy's federal and state false arrest claims together. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004); see also Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007).

In their Motion for Summary Judgment, defendants contend that they are entitled to summary judgment as to the false arrest claims because the charges against Murphy were dismissed only following Murphy's completion of Connecticut's accelerated rehabilitation program pursuant to Connecticut General Statute section 54-56e. See Mot. for Summ. Judg. at 5-11. Specifically, defendants urge that participation in a pretrial rehabilitation program precludes false arrest claims because such programs do

---

Local Rule 56(a)(2) Stmt at ¶¶ 3-4.

not create a "favorable termination" of a defendant's criminal charges.  However, Murphy responds that a plaintiff asserting a false arrest claim need not demonstrate that the charges filed against them were favorably terminated.  See Opposition to Mot. for Summ. Judg. at 2-6.

      A.      Favorable Termination Requirement for Proving Unlawful Arrest

Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  Green v. Donroe, 186 Conn. 265, 267 (1982).  "In a false arrest action, Connecticut law places the burden of proving an unlawful arrest on the plaintiff."  Russo, 479 F.3d at 203 (citations omitted).  The Second Circuit has held that favorable termination of the underlying criminal proceeding is an element of a false arrest claim in Connecticut.  See Roesch v. Otarola, 980 F.2d 850, 852-53 (2d Cir.1992) ("Having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the [plaintiff], thereby precluding the [plaintiff] from pressing his malicious prosecution claim in this section 1983 action, it would be anomalous to allow [plaintiff] to challenge here the existence of probable cause for his arrest and incarceration for that same criminal charge."); Miles v. City of Hartford, No. 08-CV-307, 2010 WL 148452 at *5 (D. Conn. Jan. 12, 2010). Therefore, if the plaintiff does not obtain a favorable disposition, the municipal defendants are entitled to summary judgment on false imprisonment and false arrest claims.

However, as Murphy notes, the Roesch holding has been called into question by subsequent cases within the Second Circuit.  Most notably, in Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996), the Second Circuit Court of Appeals announced that it "ha[d] several difficulties with [the Roesch] ruling."  Although the section 1983 false arrest

claim before the court in Weyant involved events occurring in New York and therefore implicated New York state law, id. at 853, the court criticized the Roesch decision.  The Weyant court characterized Roesch as a case in which the panel "impose[d] a favorable-termination-of-prosecution requirement in connection with a disposition similar to a settlement of the litigation."  Id. at 853.  The court also noted that, despite Roesch's suggestion to the contrary, Connecticut state law is not clearly settled on the question of whether favorable termination is an element of a claim for false arrest. Id.

Nonetheless, Weyant did not disrupt the fundamental holding of Roesch that, under Connecticut law, a favorable termination analysis applies to a false arrest claim.  As another court in this district recently made clear, "This Court has stated in the past, and continues to believe, that despite the uncertainty surrounding the holding in Roesch, it remains good law that this Court must follow absent a ruling to the contrary from the Second Circuit or a Connecticut appellate court."  Miles, 2010 WL 148452 at *5 (citing cases).  Nor do the cases relied upon by Murphy's Opposition undermine Roesch's essential holding.  The majority of those cases only involve false imprisonment claims where no official arrest took place.  See, e.g., Berry v. Louisea, 223 Conn. 786, 820-21 (1992) (addressing confinement of plaintiff by non-officer defendant).  Therefore, it is unsurprising that courts addressing such circumstances would not list a favorable termination of charges as a requirement for stating a valid claim.  Where false imprisonment claims are based entirely on the validity of the plaintiff's arrest, however, applicable precedent makes clear that a favorable termination requirement exists.  See  Roesch, 980 F.2d at 852-53; Miles, 2010 WL 148452 at *5.

B.     Nature of Connecticut's Accelerated Rehabilitation Program

In light of the court's conclusion that Roesch continues to govern false arrest claims in Connecticut, the question becomes whether the disposition of the charges against Murphy through Murphy's participation in the Accelerated Rehabilitation Program as established by Connecticut General Statute section 54-56e constitutes a "favorable termination." "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980) (citations omitted). Specifically, a plaintiff "may satisfy the favorable termination element by showing that the charges . . . were discharged without a trial under circumstances amounting to the abandonment of the prosecution without request by him or arrangement with him." Frey v. Maloney, 476 F. Supp. 2d 141, 148 (D. Conn. 2007) (internal quotation marks and citations omitted).

While there is a split of authority in this district regarding whether a nolle prosequi constitutes a favorable termination, see Russo v. City of Bridgeport, 479 F.3d at 204 n.9 (citing cases, and noting that the Second Circuit has yet to resolve this issue), courts have consistently held that participation in Connecticut's accelerated rehabilitation program cannot be regarded as a termination that is favorable to the criminal defendant. Roesch itself involved a plaintiff whose criminal charges were terminated through the same rehabilitation program that Murphy participated in. Roesch, 980 F.2d at 853. The Second Circuit concluded, "We hold that a dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit." Id. A court in this

district reached the same conclusion more recently in Miles v. City of Hartford. See Miles, 2010 WL 148452 at * 5.  The Miles court noted that the Connecticut Supreme Court "has described one who chooses accelerated rehabilitation as 'a person who may be guilty of the offense charged but whom the legislature has declared a worthy candidate for a second chance.'" Id.  The court thus concluded that a plaintiff whose criminal charges were dismissed subject to participation in the rehabilitation program cannot satisfy the favorable termination requirement of a false arrest claim.  The consensus regarding the character of the Connecticut accelerated rehabilitation program is perhaps best illustrated within the Weyant ruling that Murphy heavily relies upon.  There, the Second Circuit distinguished the Roesch holding precisely on the basis that the disposition created by the Connecticut accelerated pretrial rehabilitation statute was distinct from the Weyant facts, which involved "effectively no prosecution at all." Weyant, 101 F.3d at 853.

The concerns that the Second Circuit expressed in Roesch remain applicable today:

> If we permit a criminal defendant to maintain a section 1983 action after taking advantage of accelerated rehabilitation, the program, intended to give first-time offenders a second chance, would become less desirable for the State to retain and less desirable for the courts to use because the savings in resources from dismissing the criminal proceeding would be consumed in resolving the constitutional claims.

Roesch, 980 F.2d at 853.  Because the charges against Murphy were only dismissed following his participation in the accelerated rehabilitation program, and because that program does not constitute a favorable termination, the defendants are entitled to summary judgment as to Murphy's false arrest claim.

It must be noted that, even if the court did not view showing a favorable termination of the criminal charges as a requirement for a false arrest claim, defendants would still be entitled to judgment as a matter of law.  It is well established that "[a] § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."  Kent v. Katz, 312 F.3d 568, 573 (2d Cir. 2002).  Furthermore, conviction is conclusive proof of probable cause to arrest.  See Sabir v. Jowett, 214 F. Supp. 2d 226, 241 (D. Conn. 2002);  Konon v. Fornal, 612 F. Supp. 68, 71 (D. Conn. 1985); Pouncey v. Ryan, 396 F. Supp. 126, 127 (D. Conn. 1975).  Therefore, whether Murphy's completion fo the accelerated rehabilitation program is regarded as fatal to his false arrest claims because it precludes Murphy from demonstrating an essential element of that claim (namely, favorable termination), or is instead regarded as fatal to Murphy's false arrest claims because it provides defendants with a defense against those claims (namely, that probable cause existed for the arrest), defendants are entitled to summary judgment.

  C.  Conclusion

Concluding that no reasonable jury could review the facts before the court and find that Murphy was falsely arrested, the defendants' Motion for Summary Judgment as to Murphy's state and federal false arrest claims is granted.  Because Murphy's claims relating to false imprisonment is based solely on the alleged invalidity of his arrest, the court grants defendants' Motion for Summary Judgment as to those claims as well.  See Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996) ("the applicable law for these two causes of action is identical") (quoting Green v. Donroe, 186 Conn.

265, 267 (1982)).

**V.      CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment (Doc. No. 38) is hereby **GRANTED** as to Murphy's false arrest and false imprisonment claims.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of June, 2010.


                                            \_\_\_\_Janet C. Hall_____
                                            Janet C. Hall
                                            United States District Judge